UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Anthony Dilboy

   v.                                                Civil No. 13-cv-465-LM
                                                                       Opinion No. 2016 DNH 015

Warden, New Hampshire
State Prison

**O R D E R**

Anthony Dilboy is serving one of the two consecutive sentences he received from the New Hampshire Superior Court after being convicted of two counts of manslaughter. The charges against him arose out of a collision in which he killed two people by driving a pick-up truck at a high rate of speed through a red light and striking another vehicle that had the right of way. Dilboy now petitions for a writ of habeas corpus. See 28 U.S.C. § 2254. Before the court is respondent's motion for summary judgment. The court heard oral argument in this matter on January 11, 2016. For the reasons that follow, Dilboy's petition is dismissed.

**I. Discussion**

"[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is

in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Dilboy claims that he is in custody in violation of his Sixth Amendment right to confront the witnesses against him. His claim arises from the trial court's admission of testimony from Dr. Michael Wagner, who reported the results of blood tests that he did not conduct or observe. In Dilboy's view, the admission of those test results ran afoul of the United States Supreme Court's decision in Bullcoming v. New Mexico, which stands for the proposition that

> the [Sixth Amendment's] Confrontation Clause [does not] permit[] the prosecution to introduce a forensic laboratory report containing a testimonial certification – made for the purpose of proving a particular fact – through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification.

131 S. Ct. 2705, 2710 (2011). The problem with Dilboy's claim is that even if the trial court's admission of Dr. Wagner's testimony did violate the rule announced in Bullcoming, that violation did not result in the conviction for which he is in custody.

Dilboy was convicted of, and is currently serving a sentence for, manslaughter. Under New Hampshire law:

> A person is guilty of manslaughter when he causes the death of another:

>  (a) Under the influence of extreme mental or emotional disturbance caused by extreme provocation but which would otherwise constitute murder; or
>
>  (b) Recklessly.

N.H. Rev. Stat. Ann. ("RSA") § 630:2, I. Dilboy was charged with the reckless variant of manslaughter. See Trial Tr. Vol. 1, 3:9, 22.

At the end of Dilboy's trial, Judge Fauver instructed the jury on manslaughter. The New Hampshire Supreme Court, when ruling on Dilboy's direct appeal, described Judge Fauver's jury instructions this way:

> The court then stated that manslaughter has "two parts or elements" that the State must prove beyond a reasonable doubt; first, that the defendant "caused the death of another person"; and, second, that he "acted recklessly." The court defined recklessly, and then discussed the factual allegations in the indictments:
>
>> Although you do not need to find all of the factual allegations occurred, you must reach a unanimous decision as to the acts that amount to recklessness. The factual allegations that you can consider in determining recklessness are:
>>
>> The defendant drove a vehicle at an excessive rate of speed;
>>
>> Collided with a vehicle that had a right of way;
>>
>> Drove through a red light;
>>
>> And at the time was under the influence of one or more controlled drugs and/or suffering the effects of heroin withdrawal.

> The trial court instructed the jurors that they could "find that one, some, all or none of the factual allegations occurred," but that any such finding must be unanimous.

State v. Dilboy, 160 N.H. 135, 155 (2010). After giving his instructions, Judge Fauver gave the jury a form that asked it to record its findings on each of the four factual predicates that could support a determination that Dilboy had acted recklessly. See id. at 156-57. That form listed the four factual predicates and provided, for each of them, a space where the jury could place a check mark in front of the word "YES." Id. at 156.[1]

The jury found that Dilboy had been driving at an excessive rate of speed, collided with a vehicle that had the right of way, and ran a red light. See Dilboy, 160 N.H. at 157. Any one of those three findings would have been sufficient to support a determination of recklessness and a conviction for manslaughter.

With regard to the fourth possible factual predicate, i.e., being "under the influence of one or more controlled drugs and/or suffering the effects of heroin withdrawal," the jury "appeared to have checked 'yes' for question 4, but then crossed

---

[1] In addition to asking whether the jury unanimously found beyond a reasonable doubt that Dilboy performed any of the four acts that could support a determination of recklessness, the form asked an additional question: "If you have unanimously agreed on one or more of the acts above, do you also find that act(s) sufficient to prove the defendant acted recklessly as defined in my instructions and that the reckless act caused the death of another?" Dilboy, 160 N.H. at 156-57.

4

it out and wrote 'Ignore' with an arrow pointing towards the crossed-out check." Id. at 156, 157.  Thus, in the context of convicting Dilboy of manslaughter, the crime for which he is now in custody, it does not appear that the jury found that Dilboy "was under the influence of one or more controlled drugs and/or suffering the effects of heroin withdrawal." Id. at 157.  But, even if the jury had made such a finding, that finding would have been necessary to support its verdict only if it had not found that the State had proven any of the other three acts the form asked about.  Finally, while being under the influence of a controlled drug is an element of negligent homicide, see RSA 630:3, II, and Dilboy was convicted of that crime, he was never sentenced for his two negligent homicide convictions.  See Sentencing Tr., 70:15-17, 72:8-10.

In his amended petition, Dilboy framed the central issue this way:

> After trial, the jury convicted Dilboy of two counts of manslaughter, and two counts of negligent homicide. . . . By convicting him of manslaughter, the jury necessarily found that the State had proven the element of impairment beyond a reasonable doubt.

Am. Pet. (doc. no. 21) ¶ 21 (citation omitted).  If impairment was an element of manslaughter then, perhaps, Dilboy's claim might have some merit.  But, as Dilboy now concedes, his conviction for manslaughter did not require the jury to find

5

that the State had proven that he was impaired at the time of the collision. Still, he argues that the trial court's admission of Dr. Wagner's testimony had a substantial injurious effect on the jury's verdict because that testimony allowed the jury to find that he drove too fast, struck a vehicle with the right of way, and/or ran a red light because he was impaired at the time of the collision. The court is not persuaded by Dilboy's argument.

In his briefing and at oral argument, Dilboy explained that he construed the court's order of December 31, 2015, as invoking the principle of harmless error. The court's actual concern was with an antecedent issue raised by the manner in which Dilboy framed the claim he asserts in his amended petition. That issue is whether Dilboy's incarceration resulted from a determination by the jury that he was impaired by drugs at the time of the collision, a determination that could have been influenced by the testimony from Dr. Wagner that he now challenges. If analyzed along the lines suggested by Dilboy's petition, his claim fails.

Dilboy is in custody as a result of his convictions for manslaughter. Impairment, or being under the influence of a controlled substance, is not an element of manslaughter. Recklessness, which is an element of manslaughter, may be proven

by at least three other factual predicates that were proven in this case. Specifically, the State proved that Dilboy was driving too fast, struck a vehicle with the right of way, and ran a red light. However, in order to secure a conviction for manslaughter, the State was not required to prove that impairment or any other condition or circumstance was the reason why Dilboy did those things. Thus, even if the trial court admitted Dr. Wagner's testimony about Dilboy's blood test results in violation of the Sixth Amendment, Dilboy is not in custody as a result of any such error. Stated another way, Dilboy is not in custody due to a finding by the jury that he was impaired, because the conviction that resulted in his incarceration did not require the State to prove impairment. In short, Dilboy is not entitled to the relief he seeks because he is not in custody as a result of any finding by the jury that required Dr. Wagner's testimony.

The result is the same even if the court assumes that Dr. Wagner's testimony was impermissible under Bullcoming and accepts Dilboy's invitation to view this case through the lens of harmless error. Where, as here, the state appellate court did not conduct a harmless-error analysis pursuant to Chapman v. California, 386 U.S. 18 (1967), this court must apply the standard announced in Brecht v. Abrahamson, 507 U.S. 619 (1993),

7

to determine whether the trial court's constitutional error was harmless.  See Connolly v. Roden, 752 F.3d 505, 510 (1st Cir. 2014).  Under Brecht, "a habeas petitioner . . . must show that the error 'had a substantial and injurious effect or influence in determining the jury's verdict.'"  Connolly, 752 F.3d at 509 (quoting Brecht, 507 U.S. at 637; citing Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

In Connolly, the trial court admitted "a certificate from [a] drug analysis laboratory explaining that [a certain piece of evidence] was cocaine and weighed 124.31 grams, without calling the analyst as a witness and so not making the analyst available for confrontation."  752 F.3d at 507-08.  The composition and weight of the piece of evidence in Connolly were both material facts:

> For all counts, the prosecution had to prove that the substance in question was cocaine.  The distribution counts, however, did not require any evidence of quantity; that evidence was relevant only to the trafficking count, for which the prosecution had to prove a quantity of between 100 and 200 grams.  See Mass. Gen. Laws ch. 94C, §§ 32A(c), 32E(b)(3).

Id. at 507 n.3.  The trial court's admission of the certificate in Connolly violated the defendant's Sixth Amendment right to confrontation under the rule announced in Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009).  See Connolly, 752 F.3d at 506.  The Massachusetts Supreme Judicial Court held that the

trial court's Melendez-Diaz error was harmless. See id. "On federal habeas review, the district court denied the petition, reasoning that the state courts had already found that the error was harmless and that the petitioner could not show sufficient injury under the highly deferential standards announced by the Supreme Court in Brecht . . . and Fry v. Pliler, 551 U.S. 112, 119-20 (2007)." Id. (parallel citations omitted).

The court of appeals affirmed, and explained that because the petitioner had "not challenged the accuracy of the lab certificates," he could not "show substantial and injurious effects on the jury's verdict." Connolly, 752 F.3d at 514 (citing Dominguez v. Duval, 527 F. App'x 38, 41 (1st Cir. 2013)). The court elaborated:

> Connolly does not claim that, had he been able to cross-examine the lab technician, the jury would have been more likely to conclude that the ball of cocaine weighed under 100 grams. Without any such claim, he cannot show on habeas review that the admission of the drug certificates had a "substantial and injurious" effect on the jury's decision. And even if he made that claim, he has not put forward any evidence indicating what would have been revealed on cross-examination, leaving the support for his claim a matter of "pure speculation." That is insufficient to show a "substantial and injurious" effect on the verdict.

Id. at 515 (footnote and citation omitted).

Here, Dilboy does not claim that had he been able to cross-examine the lab technician who tested his blood, the jury would

9

have been more likely to conclude that he was not driving at an excessive rate of speed, that he did not collide with a vehicle that had the right of way, or that he did not run a red light.[2] Without any such claim, he cannot show that the admission of Dr. Wagner's testimony had a substantial and injurious effect on the jury's verdict. If it was harmless error, under the Brecht standard, for the trial court in Connolly to admit testimony that violated the Confrontation Clause on matters that the State was obligated to prove, there can be no doubt that it was harmless error in this case for the trial court to admit Dr. Wagner's testimony, which was relevant only to impairment, a matter that the State was not obligated to prove to secure a conviction for manslaughter.

## II. Conclusion

For the reasons described above, Dilboy has failed to state a claim for habeas relief. Accordingly, respondent's motion for summary judgment, document no. 26, is granted. The clerk of the

---

[2] If Dilboy could show that cross-examination of the lab technician would have made the jury more likely to conclude that he was not impaired at the time of the collision, that might call into question the validity of his conviction for negligent homicide. But he is not serving time for that conviction. Thus, the invalidity of that conviction could not provide the basis for habeas relief.

court shall enter judgment in accordance with this order and close the case.

    SO ORDERED.

                                        _____
                                        Landya McCafferty
                                        United States District Judge

January 19, 2016

cc:   Theodore M. Lothstein, Esq.
       Elizabeth C. Woodcock, Esq.